UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| DENTAL RECYCLING NORTH AMERICA, INC.,<br><br>Plaintiff,<br><br>-v.-<br><br>STOMA VENTURES, LLC,<br><br>Defendant. | 21 Civ. 9147 (KPF)<br><br>**OPINION AND ORDER** |

KATHERINE POLK FAILLA, District Judge:

Plaintiff Dental Recycling North America, Inc., a Delaware corporation with its principal place of business in New York, brings this action against Stoma Ventures, LLC, a Missouri-based competitor, alleging false advertising under the Lanham Act, 15 U.S.C. § 1125(a), and unfair competition under Missouri common law, and requesting an injunction against the continued sale, marketing, and importation of "Capt-all," the product at issue in this matter. Plaintiff claims that it has been and continues to be injured by Defendant's false or misleading representations in the forms of Defendant's diversion of Plaintiff's sales or Plaintiff's loss of goodwill.

Defendant has moved to dismiss the operative complaint for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). Alternatively, Defendant has moved to transfer this case to the United States District Court for the Eastern District of Missouri pursuant to 28 U.S.C. § 1406(a). In response, Plaintiff has requested leave to conduct jurisdictional discovery. For the reasons that follow, the Court reserves decision on

Defendant's motion and grants Plaintiff leave to conduct limited jurisdictional discovery.

## BACKGROUND[1]

### A.    Factual Background

Plaintiff Dental Recycling North America, Inc. ("DRNA" or "Plaintiff") is a Delaware corporation whose principal place of business is in New York, New York.  (FAC ¶ 3).  Plaintiff designs, markets, and sells branded products for the dental industry, including amalgam removal devices designed to capture and separate amalgam particles from dental office wastewater before the latter's release into the public water supply.  (*Id.* ¶¶ 14, 16, 19).

Plaintiff is a direct competitor of Defendant Stoma Ventures, LLC ("Stoma" or "Defendant"), a Missouri corporation whose principal place of business is in Chesterfield, Missouri.  (FAC ¶¶ 4, 15, 18).  Like Plaintiff, Defendant is in the removal device business.  Defendant advertises and sells an amalgam removal device called "Capt-all."  (*Id.* ¶¶ 17-18).  Amalgam often

---

[1]    This Opinion draws its facts primarily from the First Amended Complaint (the "FAC" (Dkt. #27)), the well-pleaded allegations of which are taken as true for the purposes of this Opinion.  The Court also considers: (i) the Declaration of Paul Smelcer in support of Defendant's motion to dismiss ("Smelcer Decl." (Dkt. #30)) and the exhibits attached thereto; (ii) the Declaration of Robert Vanderselt submitted in support of Defendant's motion to dismiss ("Vanderselt Decl." (Dkt. #31)) and the exhibits attached thereto, including Defendant's recycle system report ("Stoma Recycle Report" (Dkt. #31-2)); and (iii) the Declaration of Paul Smelcer submitted as part of Defendant's reply memorandum ("Smelcer Reply Decl." (Dkt. #34)) and the exhibits attached thereto, including an email chain between the parties regarding jurisdictional discovery (the "Jurisdictional Discovery Emails" (Dkt. #34-2)).

For ease of reference, the Court refers to Defendant's memorandum of law in support of its motion to dismiss as "Def. Br." (Dkt. #29); Plaintiff's memorandum of law in opposition to Defendant's motion to dismiss as "Pl. Opp." (Dkt. #32); and Defendant's reply memorandum as "Def. Reply" (Dkt. #33).

contains toxic mercury and, as such, each state regulates its disposal.  (*Id.* ¶ 19; Vanderselt Decl. ¶ 6).  Given this toxicity, amalgam devices are also regulated by the Environmental Protection Agency (the "EPA").  (*Id.* ¶ 19).  The relevant EPA regulations split amalgam devices into two categories:  separators and separator-equivalent devices.  (*Id.* ¶ 20).  Plaintiff asserts that Defendant falsely advertised its Capt-all product as an amalgam separator device and falsely stated that it was in compliance with all EPA regulations for such devices.  (*Id.* ¶¶ 21-23).  Plaintiff further alleges that these false advertisements were made to fraudulently obtain enhanced market share in the amalgam removal market.  (*Id.* ¶ 25).  As support for its false advertising claims, Plaintiff asserts that (i) Capt-all has not been tested by a correctly certified or accredited laboratory using the methodologies required by the EPA; and (ii) Capt-all, by its design, cannot and does not removal amalgam from "all amalgam process wastewater," as required by the EPA.  (*Id.* ¶¶ 30, 56-58).

Accordingly, Plaintiff asserts the following causes of action: (i) false advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a), and (ii) unfair competition and false advertising in violation of Missouri state law.  Further, Plaintiff requests that the Court enjoin Defendant from further advertisement, promotion, manufacture, importation into the United States, offer for sale, and sale of Capt-all, unless and until that product is found to be EPA-compliant. (FAC ¶ 63).  Among other claims, Plaintiff alleges that Defendant injured Plaintiff through its use of false and misleading advertisements as a means of

either diverting sales away from Plaintiff or contributing to Plaintiff's loss of customer goodwill. (*Id.* ¶ 50).

**B.    Procedural Background**

Plaintiff initiated this action on November 4, 2021, by filing its initial complaint. (Dkt. #1). On February 1, 2022, Defendant filed a pre-motion letter stating that it intended to file a motion to dismiss the complaint and requesting a conference to discuss its anticipated motion. (Dkt. #18). Plaintiff filed its opposition to Defendant's pre-motion letter on February 3, 2022. (Dkt. #19). On February 7, 2022, the Court granted Defendant's request for a pre-motion conference and stated that it would discuss Defendant's anticipated motion at the initial pretrial conference scheduled for February 25, 2022. (Dkt. #20).

At the initial pretrial conference, Plaintiff requested leave to file an amended complaint, which request the Court granted. (*See* February 25, 2022 Minute Entry). During that conference, the Court set a briefing schedule for Defendant's motion to dismiss. (*Id.*). Plaintiff filed the First Amended Complaint (the "FAC") on March 14, 2022. (Dkt. #27). Defendant filed its motion to dismiss and accompanying papers on April 12, 2022 (Dkt. #28-31); Plaintiff filed its opposition on May 9, 2022 (Dkt. #32); and Defendant filed its reply and a supporting declaration on May 25, 2022 (Dkt. #33-34).

## DISCUSSION

The Court first reviews the legal principles governing personal jurisdiction and the parties' arguments regarding application of these principles to the facts of this case, and then explains why jurisdictional discovery is warranted.

**A.    Motions to Dismiss for Lack of Personal Jurisdiction Under Federal Rule of Civil Procedure 12(b)(2)**

On a motion to dismiss for lack of personal jurisdiction brought pursuant to Federal Rule of Civil Procedure 12(b)(2), "the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant." *DiStefano* v. *Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001) (quoting *Bank Brussels Lambert* v. *Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999)).  Where, as here, the parties have not engaged in discovery, a plaintiff seeking to defeat a motion to dismiss based on the lack of personal jurisdiction need only make a *prima facie* showing that jurisdiction exists.  *See, e.g.*, *Dorchester Fin. Secs., Inc.* v. *Banco BRJ, S.A.*, 722 F.3d 81, 84-85 (2d Cir. 2013) (per curiam) (quoting *Ball* v. *Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)).  That showing requires "an averment of facts that, if credited[,] would suffice" to establish that jurisdiction exists.  *S. New England Tel. Co.* v. *Global NAPs Inc.*, 624 F.3d 123, 138 (2d Cir. 2010) (internal quotation marks omitted).

Jurisdictional allegations "are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor."  *Elsevier, Inc.* v. *Grossman*, 77 F. Supp. 3d 331, 341 (S.D.N.Y. 2015) (quoting *A.I. Trade Fin.*,

*Inc.* v. *Petra Bank*, 989 F.2d 76, 79-80 (2d Cir. 1993) (alteration adopted)). Nevertheless, the court "will not draw argumentative inferences in the plaintiff's favor" and need not "accept as true a legal conclusion couched as a factual allegation[.]" *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013) (internal quotation marks and citations omitted). In addition, the allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits, which the district court may also consider. *See, e.g.*, *MacDermid, Inc.* v. *Deiter*, 702 F.3d 725, 727-28 (2d Cir. 2012) (citation omitted).

To determine whether personal jurisdiction exists over a non-domiciliary defendant in a case involving a federal question, courts engage in a two-step inquiry. *Chloé* v. *Queen Bee of Beverly Hills, LLC,* 616 F.3d 158, 163 (2d Cir. 2010) (citing *Best Van Lines, Inc.* v. *Walker,* 490 F.3d 239, 243-44 (2d Cir. 2007)). Courts first apply the long-arm statute of the forum state to see whether it permits the exercise of personal jurisdiction over the defendant. *Id.* If the laws of the forum state permit jurisdiction, courts then consider whether the exercise of such jurisdiction comports with constitutional due process. *See Best Van Lines*, 490 F.3d at 242. New York's long-arm statute governs this Court's analysis. *See Chloé*, 616 F.3d at 163; *McGraw-Hill Glob. Educ. Holdings, LLC* v. *Mathrani*, 295 F. Supp. 3d 404, 410 (S.D.N.Y. 2017).

## B. Personal Jurisdiction over Defendant Under New York's Long-Arm Statute

Under New York's long-arm statute, there are two ways to establish personal jurisdiction over a defendant: (i) "general jurisdiction" under New York

6

Civil Practice Law and Rules ("N.Y. C.P.L.R.") § 301; and (ii) "specific jurisdiction" under N.Y. C.P.L.R. § 302.  General jurisdiction renders a defendant amenable to suit on all claims, while specific jurisdiction covers only claims that arise from conduct related to the forum.  *Metro. Life Ins. Co.* v. *Robertson-Ceco Corp.*, 84 F.3d 560, 567-68 (2d Cir. 1996); *see also Brown* v. *Lockheed Martin Corp.*, 814 F.3d 619, 624 (2d Cir. 2016).  The Court addresses each in turn.

### 1.    The Court Lacks General Jurisdiction over Defendant Under N.Y. C.P.L.R. § 301

Plaintiff alleges in the FAC that the Court has general jurisdiction over Defendant pursuant to N.Y. C.P.L.R. § 301.  (FAC ¶ 7).  Defendant argues, however, that Plaintiff has abandoned this argument through its silence in its opposition papers to the present motion.  (Def. Reply 4).  The Court agrees.

In its motion to dismiss, Defendant argues, *inter alia*, that Plaintiff's "bare legal conclusions" of general jurisdiction fail to satisfy its heavy burden under *Daimler AG* v. *Bauman*, 571 U.S. 117 (2014).  (Def. Br. 7).  Plaintiff argues nothing in response.  Indeed, Plaintiff's sole reference to general jurisdiction in the entirety of its opposition is that "[a]ccepting the allegations as true, DRNA's [FAC] … adequately asserts personal jurisdiction under [N.Y. C.P.L.R.] § 301[.]"  (*Compare* Pl. Opp. 7, *with id.* at 7-9 (section regarding specific jurisdiction under N.Y. C.P.L.R. § 302(a)(1)), *and id.* at 10-13 (section regarding specific jurisdiction under N.Y. C.P.L.R. § 302(a)(3))).

The Second Circuit has long held that "'[w]hen a party fails adequately to present arguments' in a brief, a court may properly 'consider those arguments

abandoned[.]'" *Malik* v. *City of New York*, 841 F. App'x 281, 284 (2d Cir. 2021) (summary order) (quoting *State St. Bank & Tr. Co.* v. *Inversiones Errazuriz Limitada*, 374 F.3d 158, 172 (2d Cir. 2004)); *see also Chamberlain* v. *City of White Plains*, 986 F. Supp. 2d 363, 392 (S.D.N.Y. 2013) ("A court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed." (internal quotation marks omitted)).[2] This is true for claims about personal jurisdiction. *See, e.g.*, *Jarman, Spitzer & Feliz, Inc.* v. *Viajes Marsans, S.A.*, No. 88 Civ. 8731 (CSH), 1990 WL 13199, at *1 (S.D.N.Y. Feb. 6, 1990) (finding that plaintiff had "abandon[ed] any theory of jurisdiction over [defendant] under N.Y. C.P.L.R.

---

[2]    Even had this argument not been waived, the exercise of general jurisdiction over Defendant would not comport with constitutional due process. Indeed, "*Daimler* established that, except in a truly 'exceptional' case, a corporate defendant may be treated as 'essentially at home' only where it is incorporated or maintains its principal place of business — the 'paradigm' cases." *Brown* v. *Lockheed Martin Corp.*, 814 F.3d 619, 627 (2d Cir. 2016) (citing *In re Roman Catholic Diocese of Albany, N.Y., Inc.*, 745 F.3d 30, 39-41 (2d Cir. 2014) (recognizing restrictions voiced by Supreme Court in *Daimler*)). The Supreme Court recognized such an "exceptional case" in *Perkins* v. *Benguet Consolidated Mining Co.*, 342 U.S. 437 (1952), in which it found there to be general jurisdiction where the defendant company's principal place of business was temporarily relocated from the Philippines to Ohio (where it was sued) due to wartime circumstances. Plaintiff alleges much less here. In the FAC, Plaintiff asserts summarily that both specific and general jurisdiction are proper because Defendant "regularly does and solicits business, engages in a persistent course of conduct, and derives substantial revenues from its activities in New York, including without limitation, by and through its dealings with Henry Schein, Inc. and Darby Dental Supply, LLC[.]" (FAC ¶ 12). But such contacts are plainly insufficient to confer general jurisdiction. *See In re Steinmetz*, No. 20 Misc. 212 (AJN), 2022 WL 170851, at *3 (S.D.N.Y. Jan. 19, 2022) ("The Second Circuit has ... explained that 'even a company's engage[ment] in a substantial, continuous, and systematic course of business' is alone insufficient to render it at home in a forum." (quoting *Sonera Holding B.V.* v. *Çukurova Holding A.Ş.*, 750 F.3d 221, 226 (2d Cir. 2014) (quoting *Daimler AG* v. *Bauman*, 571 U.S. 117, 138 (2014))) (internal quotation marks omitted)); *Sharbat* v. *Iovance Biotherapeutics, Inc.*, No. 20 Civ. 1391 (ER), 2021 WL 1164717, at *4-5 (S.D.N.Y. Mar. 26, 2021) (finding that defendant's interactions with investors and attorneys in New York, having a "lead placement agent located in New York[,]" and having its CEO travel to New York did not render the case "exceptional" for purposes of general jurisdiction).

§ 301"); *see also English* v. *21st Phoenix Corp.*, 590 F.2d 723, 728 n.5 (8th Cir. 1979) ("Unlike subject matter jurisdiction, in personam jurisdiction may be obtained by actions of a party amounting to waiver, and a court has jurisdiction to enter an order finding a waiver."). By failing to respond to Defendant's arguments regarding general jurisdiction in its brief, Plaintiff has waived any potential general jurisdiction argument.

> **2.  The Court May Have Specific Jurisdiction over Defendant Under N.Y. C.P.L.R. § 302(a)(1) and (a)(3), But Limited Jurisdictional Discovery Is Required**

By contrast, the Court finds that Plaintiff has adequately raised a genuine issue of jurisdictional fact regarding specific jurisdiction under N.Y. C.P.L.R. § 302(a)(1) and (a)(3). In consequence, the Court grants Plaintiff's request for leave to conduct limited jurisdictional discovery as stated below and reserves decision on Defendant's motion to dismiss.

> **a.  Applicable Law**

To establish specific jurisdiction under N.Y. C.P.L.R. § 302(a)(1), two conditions must be met. *First*, the defendant must "transact … business within the state or contract[ ] anywhere to supply goods or services in the state." N.Y. C.P.L.R. § 302(a)(1). *Second*, the cause of action must arise from "[a]cts which are the basis of jurisdiction." *Id.* This second condition requires a showing that the contacts with the state had a "substantial relationship" or an "articulable nexus" to the cause of action. *See, e.g.*, *Sole Resort, S.A. de C.V.* v. *Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006); *Best Van Lines*, 490 F.3d at 246. Of potential note, Section 302(a)(1) is a "single act" statute;

therefore, the defendant need not have engaged in more than one transaction in, or directed to, New York for New York courts to exercise jurisdiction.  *See Deutsche Bank Sec., Inc.* v. *Mont. Bd. of Invs.*, 7 N.Y.3d 65, 71 (2006) (internal quotation marks omitted).  Jurisdiction under Section 302(a)(1) exists even if "the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted."  *Kreutter* v. *McFadden Oil Corp.*, 71 N.Y.2d 460, 467 (1988) (citations omitted).  A court may also find jurisdiction based on the totality of the defendant's conduct in the forum state. *See, e.g.*, *CutCo Indus., Inc.* v. *Naughton*, 806 F.2d 361, 365 (2d Cir. 1986) ("No single event or contact connecting defendant to the forum state need be demonstrated; rather, the totality of all defendant's contacts with the forum state must indicate that the exercise of jurisdiction would be proper." (citations omitted)).

Section 302(a)(3) also permits courts to exercise personal jurisdiction over a non-domiciliary defendant "who in person or through an agent ... commits a tortious act without the state causing injury to person or property within the state."  N.Y. C.P.L.R. § 302(a)(3).  Section 302(a)(3) only applies to a defendant that either "(i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce[.]"  *Id.*

10

Once the plaintiff makes a *prima facie* showing of a statutory basis for jurisdiction, the plaintiff must then "demonstrate that the exercise of jurisdiction comports with due process." *Charles Schwab Corp.* v. *Bank of Am. Corp.*, 883 F.3d 68, 82 (2d Cir. 2018); *see also Int'l Shoe Co.* v. *Washington*, 326 U.S. 310, 316 (1945). The constitutional analysis under the Due Process Clause consists of two separate components: the "minimum contacts" inquiry and the "reasonableness" inquiry. *Licci ex rel. Licci* v. *Lebanese Canadian Bank, SAL*, 673 F.3d 50, 60 (2d Cir. 2012) ("*Licci I*") (citing *Chloé*, 616 F.3d at 164).

The constitutional inquiry examines "whether the defendant has sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction." *Licci*, 673 F.3d at 60. The court considers these contacts in totality, with the crucial question being whether the defendant has "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws … such that the defendant should reasonably anticipate being haled into court there[.]" *Best Van Lines, Inc.*, 490 F.3d at 242 (quoting *Burger King Corp.* v. *Rudzewicz*, 471 U.S. 464, 474-75 (1985)) (internal quotation marks and citations omitted and alterations adopted). Specific jurisdiction may also comport with due process even if the relevant conduct took place entirely outside the forum, based on the "in-state effects of out-of-state activity." *Id.* at 243. Where this so-called "effects test" is invoked, "the exercise of personal jurisdiction may be constitutionally permissible if the defendant expressly

11

aimed its conduct at the forum." *Licci ex rel. Licci* v. *Lebanese Canadian Bank, SAL*, 732 F.3d 161, 173 (2d Cir. 2013) ("*Licci II*") (citing *Calder* v. *Jones*, 465 U.S. 783, 789 (1983)). However, the mere "fact that harm in the forum is foreseeable ... is insufficient for the purpose of establishing specific personal jurisdiction over a defendant." *Waldman* v. *Palestinian Liberation Org.*, 835 F.3d 317, 339 (2d Cir. 2016) (quoting *In re Terrorist Attacks*, 714 F.3d at 674).

The "reasonableness" inquiry examines "whether the assertion of personal jurisdiction comports with 'traditional notions of fair play and substantial justice' — that is, whether it is reasonable to exercise personal jurisdiction under the circumstances of the particular case." *Licci I*, 673 F.3d at 60 (quoting *Chloé*, 616 F.3d at 164). As part of the "reasonableness" inquiry, the Court considers: "([i]) the burden that the exercise of jurisdiction will impose on the defendant; ([ii]) the interests of the forum state in adjudicating the case; ([iii]) the plaintiff's interest in obtaining convenient and effective relief; ([iv]) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and ([v]) the shared interest of the states in furthering substantive social policies." *Chloé*, 616 F.3d at 164-65 (citations omitted).

If, however, "a plaintiff has identified a genuine issue of jurisdictional fact, jurisdiction[al] discovery is appropriate even in the absence of a *prima facie* showing as to the existence of jurisdiction." *Daventree Ltd.* v. *Rep. of Azerbaijan*, 349 F. Supp. 2d 736, 761 (S.D.N.Y. 2004) (citing *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 207-08 (2d Cir. 2003) (per curiam)); *In*

12

*re Terrorist Attacks on Sept. 11, 2001*, 349 F. Supp. 2d 765, 811-12 (S.D.N.Y. 2005), *aff'd*, 538 F.3d 71 (2d Cir. 2008), *and* 714 F.3d 118 (2d Cir. 2013) ("[i]n evaluating jurisdictional motions, district courts enjoy broad discretion in deciding whether to order discovery").  In such a case, "[a] district court retains considerable latitude in devising the procedures it will follow to ferret out the facts pertinent to jurisdiction."  *APWU* v. *Potter*, 343 F.3d 619, 627 (2d Cir. 2003) (internal quotation marks omitted).  "However, a court is not obligated to subject a foreign corporation to discovery where the allegations of jurisdictional facts, construed most favorably in the plaintiff's favor, fail to state a basis for the exercise of jurisdiction or where a plaintiff's proposed discovery, if granted, would not uncover facts sufficient to sustain jurisdiction."  *Daventree Ltd.*, 349 F. Supp. 2d at 761 (citing *Jazini* v. *Nissan Motor Co.*, 148 F.3d 181, 185-86 (2d Cir. 1998); *APWU*, 343 F.3d at 627).

### b.   Analysis

Plaintiff asserts that specific personal jurisdiction over Defendant is proper under N.Y. C.P.L.R. § 302(a)(1) and (a)(3) based on Defendant's contracts with Henry Schein, Inc. ("Henry Schein") and Darby Dental Supply, LLC ("Darby Dental"), dental product distributors headquartered in New York. (FAC ¶¶ 8-9).  Plaintiff alleges that these contracts allow Defendant to advertise and ship supplies to New York customers.  (*Id.* ¶¶ 8-11).  It is on this basis, and the allegation that both Henry Schein and Darby Dental list the Capt-all product on their respective websites, that Plaintiff alleges that Defendant "regularly and systematically does business in New York, by contracting to

13

supply goods and/or by shipping goods, believed to represent a substantial percentage of Defendant's overall sales, to New York based distributors of Defendant's dental products and to other customers in New York," and that Defendant derives "substantial revenue" from such activities.  (*Id.* ¶¶ 10, 12-13).

Defendant counters that: (i) it does not, as a matter of policy, fulfill any Capt-all orders placed through its own website from a New York address, because New York regulations require a minimum removal efficiency of 99 percent of dental amalgam, and Capt-all products have only been tested to achieve a minimum of 95 percent efficiency (Vanderselt Decl. ¶ 4); (ii) it is "unaware of any Capt-all® sales by [Henry Schein and Darby Dental] in New York," and does not believe that such distributors would sell in New York because they "are sophisticated entities that are or should be aware of the 99% removal efficiency requirement in New York" (*id.* ¶ 5); (iii) it has found no evidence that anyone in New York ever sent back the recycling box included by Defendant with the Capt-all product to isolate, dispose, and recycle the captured amalgam containing mercury (*id.* ¶¶ 6-7; *see also* Stoma Recycle Report); and (iv) it "does not have the contractual right to control where these distributors resell products and lacks the practical ability to control where a distributor's Capt-all® products are being purchased and used after Stoma ships products out to a distributor" (Vanderselt Decl. ¶ 9).  In addition, Defendant argues that Plaintiff does nothing more than offer legal assertions

couched as conclusory factual allegations, while parroting the language of N.Y. C.P.L.R. § 302(a)(1) and (a)(3).  (Def. Br. 11-12, 17-19).

The Court finds guidance in a sister court's decision in *Astor Chocolate Corp* v. *Elite Gold Ltd.*, No. 18 Civ. 11913 (PAE), 2020 WL 2130680 (S.D.N.Y. May 5, 2020).  The plaintiff in that case claimed that the fact that the defendant shipped "at least one" package into New York State — namely, a package plaintiff's counsel had ordered during the pendency of the lawsuit — was sufficient to confer jurisdiction under Section 302.  *Id.* at *9.  While the fact of shipment alone was insufficient to find personal jurisdiction, the court found that the plaintiff had raised a "genuine issue of jurisdictional fact" for which jurisdictional discovery was appropriate.  *Id.*  Indeed, Judge Engelmayer found that, because one of the defendants submitted declarations that were "deafeningly silent" as to whether that defendant sold products to customers other than plaintiff's counsel, jurisdictional discovery was appropriate.  *Id.* Additionally, the court ordered jurisdictional discovery for another defendant whose "carefully worded declarations only partially refute[d the plaintiff's] allegations relating to personal jurisdiction."  *Id.* at *10.  There, as here, the defendant denied itself selling goods into New York, but its declarations "le[ft] open the possibility that its licensees knowingly [sold the products at issue] into New York … potentially through an additional entity[.]"  *Id.*

It is not apparent from the record currently before the Court that any of Defendant's products was sold in New York.  Conversely, however, Vanderselt never specifically states that the Capt-all product has not been sold to New

York customers, nor does he state that Defendant instructed Henry Schein and Darby Dental not to sell to New York customers.  Instead, his declaration avers only that Defendant provides a recycling box with every purchase of the Capt-all product, and that "[o]nce the recycling box is full of used products containing captured amalgam, customers *can* request a shipping label from Stoma to facilitate the customer's shipment of used products" to their recycler. (Vanderselt Decl. ¶ 6 (emphasis added)).  Vanderselt also provides a copy of a report generated from Defendant's recycling program suggesting that no New York user has ever returned the recycling box.  (*See id.* ¶ 7; Stoma Recycle Report).  This is not the smoking gun Defendant believes it to be.  That no New York users have utilized Defendant's special recycling program says nothing about the possibility that Defendant may have contracted with Henry Schein or Darby Dental as a means of reaching New York customers.  After all, Vanderselt states only that the recycling program is meant to assist its customers with "state-specific requirements for proper disposal and recycling of captured amalgam *containing mercury.*"  (Vanderselt Decl. ¶ 6 (emphasis added)).  In the FAC, Plaintiff notes that amalgam "often" (but not always) contains toxic mercury.  (FAC ¶ 19).  As such, it is possible that some customers who purchased Capt-all products have amalgam without mercury, or have not used the product enough to warrant sending back the recycling box, or simply chose not to participate in the company's recycling program.

Additionally, Defendant's claim that it has no control over where the New York distributors sell its products is unconvincing, at least at this stage of the

16

proceedings and in the absence of disclosure of the relevant distribution agreements. Indeed, without more than artful and noncommittal wording in its papers, Defendant has not sufficiently demonstrated that it is not engaged in the sales that Plaintiff claims confer jurisdiction. It is on this basis that the Court grants jurisdictional discovery.

As courts in this District have long held, "dismissal for lack of personal jurisdiction is inappropriate under [Section] 302(a)(3)(ii) 'even where there is no proof that a defendant derives substantial revenue from interstate or international commerce, where that knowledge is peculiarly under the control of [the defendant], and may come to light in the course of [s]ubsequent discovery.'" *Energy Brands Inc.* v. *Spiritual Brands, Inc.*, 571 F. Supp. 2d 458, 468 (S.D.N.Y. 2008) (quoting *Mfg. Tech., Inc.* v. *Kroger Co.*, No. 06 Civ. 3010 (JSR), 2006 WL 3714445, at *3 (S.D.N.Y. Dec. 31, 2006) (internal quotation omitted)); *see also Lugones* v. *Pete & Gerry's Organic, LLC*, 440 F. Supp. 3d 226, 236 n.3 (S.D.N.Y. 2020) (noting that "a federal court may 'order limited discovery to establish personal jurisdiction so long as plaintiff has made a threshold showing of jurisdiction and established that his jurisdictional position is not frivolous'" (quoting *Newbro* v. *Freed*, No. 03 Civ. 10308 (PKC), 2004 WL 691392, at *3 (S.D.N.Y. Mar. 31, 2004))). Indeed, without information regarding (i) the existence of sales in New York; (ii) the frequency of any such sales; and (iii) the portion of Defendant's total revenues — if any — arising from sales to New York customers, the Court can neither confirm nor refute jurisdiction under Section 302(a)(3). Because such information is solely within

Defendant's control; because the Court must construe Plaintiff's jurisdictional allegations in the light most favorable to Plaintiff, *see Elsevier, Inc.*, 77 F. Supp. 3d at 341; and because Plaintiff has identified a genuine issue of jurisdictional fact, the Court orders jurisdictional discovery.

Limited jurisdictional discovery is further warranted because if Defendant did in fact make a sale in New York — whether through Henry Schein, Darby Dental, or otherwise — thereby "transact[ing] ... business within the state or contract[ing] anywhere to supply goods or services in the state[,]" Section 302(a)(1) may be satisfied.  N.Y. C.P.L.R. § 302(a)(1).  While it is true that "a defendant's relationship with a ... third party, standing alone, is an insufficient basis for jurisdiction[,]" *Walden* v. *Fiore*, 571 U.S. 277, 286 (2014), "[c]ourts have held that shipping an infringing item into New York to a New York customer is sufficient to satisfy C.P.L.R. § 302(a)(1)," *Veraggio, Ltd.* v. *S K Diamonds*, No. 16 Civ. 6931 (KBF), 2017 WL 1750451, at *4 (S.D.N.Y. May 4, 2017) (collecting cases).  *See also Carson Optical, Inc.* v. *RQ Innovasion Inc.*, No. 16 Civ. 1157 (SIL), 2020 WL 1516394, at *3 (E.D.N.Y. Mar. 30, 2020) ("When the internet sales at issue occur through third-party websites such as Amazon, and the defendants merely post their items on that website and then ship their goods to an Amazon fulfilment center before Amazon ultimately sends the goods to consumers, jurisdiction is still proper." (collecting cases)).

### 3.    Scope of Jurisdictional Discovery

"In evaluating jurisdictional motions, district courts enjoy broad discretion in deciding whether to order discovery[,]" *Vasquez* v. *Hong Kong &*

18

*Shanghai Banking Corp. Ltd.*, No. 18 Civ. 1876 (PAE), 2019 WL 3252907, at *1 (S.D.N.Y. July 19, 2019) (internal quotation marks and citation omitted), and "retain[ ] considerable latitude in devising the procedures [they] will follow to ferret out the facts pertinent to jurisdiction," *Potter*, 343 F.3d at 627 (internal quotation marks and citation omitted). Defendant noted in its brief that it "will respond to [Plaintiff's] requests regarding jurisdictional discovery if and when they are presented to the Court." (Def. Br. 9 n.7). The Court has reviewed the request Plaintiff emailed to Defendant on March 2, 2022 — namely, a request for "all agreements and other relevant correspondence between [Defendant] and its New York based distributors demonstrating, for example, ([i]) how the Stoma products get to the distributors and/or the distributor's customers and ([ii]) any written confirmation (pre-filing [of the FAC]) that the distributors will refuse to ship the Capt-all products to New York" — and finds the request to be reasonable and necessary to resolve the genuine issue of jurisdictional fact regarding whether Defendant sold or intended to sell to New York customers through third-party distributors. (Jurisdictional Discovery Emails 13).

The Court accordingly grants Plaintiff leave to take jurisdictional discovery — limited to written and document discovery only — regarding: (i) whether and to what extent Defendant has either permitted or intended for Henry Schein and/or Darby Dental to sell Capt-all products into New York, including any distribution agreements between Defendant and such distributors; (ii) whether any Capt-all product has been sold to any New York customers by Defendant, Henry Schein, or Darby Dental from January 2020

19

(the date Vanderselt alleges that Plaintiff acquired ownership and rights to the Capt-all product (*see* Vanderselt Decl. ¶ 10)) to the date this lawsuit was initiated; and (iii) what percentage of Defendant's total revenue is derived from such sales.  Plaintiff's demands for such discovery are due on or before February 3, 2023, and Defendant shall produce all responsive materials on or before March 1, 2023.[3]

## CONCLUSION

For the foregoing reasons, the Court stays Defendant's motion to dismiss or, in the alternative, to transfer, pending jurisdictional discovery, and grants Plaintiff leave — during the time frame set out in this decision — to conduct limited jurisdictional discovery, consistent with this Opinion.  The Clerk of Court is accordingly directed to stay this case pending further order of the Court.

The Court directs Plaintiff to submit a supplemental letter brief not to exceed 10 pages on or before **March 17, 2023**, addressing what, if anything, the jurisdictional discovery indicates with respect to this Court's personal jurisdiction over Defendant.  Defendant's response is due on or before **March 31, 2023**, subject to the same page limits.  The Court does not authorize a reply.

---

[3]    For avoidance of doubt, the Court does not authorize Plaintiff at this stage to pursue merits discovery.  And because the purpose of the present round of discovery is solely to test jurisdiction, the Court directs that requests for production be tightly focused on this objective only.  Plaintiff may seek, for example, "documents sufficient to identify all the defendant company's New York sales," but, in the interest of assuring that discovery is no broader than necessary, it may not formulate its requests more broadly to reach "all documents that exist" that bear on such sales.

SO ORDERED.

Dated:      January 24, 2023
              New York, New York

                                                                  KATHERINE POLK FAILLA
                                               United States District Judge