UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| DENTAL RECYCLING NORTH AMERICA, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 4:23 CV 670 CDP |
| STOMA VENTURES, LLC, | ) ) ) | |
| Defendant. | ) | |

## **MEMORANDUM AND ORDER**

Plaintiff and defendant are competitors in the dental equipment market.

Both make and sell amalgam capture devices, which remove fillings (or pieces

thereof) from dental office wastewater.  Because fillings can contain toxic

mercury, the Environmental Protection Agency (EPA) requires dental offices to

removal amalgam from wastewater and has issued regulations governing this

process.  Among other things, these regulations state that dental offices may

comply with the EPA's requirements through the use of amalgam capture devices,

which it places into two categories – amalgam "separators" and removal devices

"other than separators."  *See* 40 C.F.R. § 441.30(a)(1) and (2).  The regulation at

issue here states in relevant part as follows:

> No later than July 14, 2020, any existing source subject to this part must
> achieve the following pretreatment standards:

(a) Removal of dental amalgam solids from all amalgam process wastewater by one of the following methods:

(1) Installation, operation, and maintenance of one or more amalgam separators that meet the following requirements:

(i) Compliant with either the American National Standards Institute (ANSI) American National Standard/American Dental Association (ADA) Specification 108 for Amalgam Separators (2009) with Technical Addendum (2011) or the International Organization for Standardization (ISO) 11143 Standard (2008) or subsequent versions so long as that version requires amalgam separators to achieve at least a 95% removal efficiency. Compliance must be assessed by an accredited testing laboratory under ANSI's accreditation program for product certification or a testing laboratory that is a signatory to the International Laboratory Accreditation Cooperation's Mutual Recognition Arrangement. The testing laboratory's scope of accreditation must include ANSI/ADA 108–2009 or ISO 11143e

. . .

(2) Installation, operation, and maintenance of one or more amalgam removal device(s) other than an amalgam separator. The amalgam removal device must meet the following requirements:

(i) Removal efficiency of at least 95 percent of the mass of solids from all amalgam process wastewater. The removal efficiency must be calculated in grams recorded to three decimal places, on a dry weight basis. The removal efficiency must be demonstrated at the maximum water flow rate through the device as established by the device manufacturer's instructions for use.

(ii) The removal efficiency must be determined using the average performance of three samples. The removal efficiency must be demonstrated using a test sample of dental amalgam that meets the following particle size distribution specifications: 60 percent by mass of particles that pass through a 3150 µm sieve but which do not pass through a 500 µm sieve, 10 percent by mass of particles that pass through a 500 µm sieve but which do not pass through a 100 µm sieve, and 30 percent by mass of particles that pass through a 100 µm sieve. Each of these three specified particle size distributions must contain a representative distribution of particle sizes.

42 C.F.R. § 441.30 (a)(1)-(2).

The EPA does not require any type of pre-market approval or certification of amalgam capture devices, nor does it pre-clear, pre-qualify, or evaluate or rule on an amalgam capture device's compliance with EPA regulations.

According to plaintiff, defendant has falsely advertised that its Capt-all device, which fits onto the end of a high volume evacuator valve, is an amalgam separator and EPA compliant.  According to plaintiff, Capt-all does not and cannot comply with EPA regulations because it only treats amalgam process wastewater that passes through its device, rather than all potential sources of amalgam process wastewater in a dental office.  Counts I and II of the amended complaint are claims for Lanham Act and contributory Lanham Act False Advertising, 15 U.S.C. Sec. 1125(a), Count III is brought under Missouri's common law of unfair competition, and Count IV purports to state a claim for injunction.

Before me now is defendant's motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Defendant contends that Counts I through III of the amended complaint should be dismissed because whether Capt-all complies with EPA regulations is a legal opinion, not a false statement of fact, and therefore cannot support a false advertising claim.  Defendant also argues the following: the amended complaint lacks the specificity required for fraud claims under Fed. R. Civ. P. 9(b); this circuit does not recognize claims for contributory false advertising; and, plaintiff cannot bring a standalone claim for an injunction.

3

Having reviewed the allegations of the amended complaint in light of the relevant standards,[1] the motion to dismiss will be denied.

To state a claim for false advertising under the Lanham Act (Count I), plaintiff here must prove: (1) a false statement of fact by defendant in a commercial advertisement about its Capt-all product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) defendant caused its false statement to enter interstate commerce; and (5) plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a loss of goodwill associated with its products. *United Industries Corp. v. Clorox Co.*, 140 F.3d

---

[1] The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint. In ruling on such a motion, I must accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff. *Hager v. Arkansas Dept. of Health*, 735 F.3d 1009, 1013 (8th Cir. 2013). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 657 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570) (2007)); *Warmington v. Bd. of Regents of Univ. of Minnesota*, 998 F.3d 789, 795 (8th Cir. 2021) (same). A claim is facially plausible where the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 657. This requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. Specific facts are not required; the complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555). The court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Legal conclusions "must be supported by factual allegations." *Id.* at 679. Absent such support, the Court "is not required to divine the litigant's intent and create claims that are not clearly raised, and it need not conjure up unpled allegations to save a complaint." *Gregory v. Dillard's, Inc.*, 565 F.3d 464, 473 (8th Cir. 2009) (citations and internal quotations omitted).

1175, 1180 (8th Cir. 1998) (cleaned up).  In addition, to recover money damages plaintiff must prove both actual damages and a causal link between defendant's violation and those damages.  *Id.* (cleaned up).

The false statement necessary to establish a Lanham Act violation generally falls into one of two categories: (1) claims that are literally false as a factual matter; and (2) claims that may be literally true or ambiguous but which implicitly convey a false impression, are misleading in context, or likely to deceive consumers.  *Clorox*, 140 F.3d at 1180 (cleaned up).  Puffery is exaggerated advertising, blustering, and boasting and is not actionable under § 43(a).  *Id.* (cleaned up).  However, false descriptions of specific or absolute characteristics of a product and specific, measurable claims of product superiority based on product testing are not puffery and are actionable.  *Id.* (cleaned up).

A claim for unfair competition under Missouri law uses the same elements as a claim under the Lanham Act, so courts faced with both claims discuss only the alleged violation of the Lanham Act.  *Children's Factory, Inc. v. Benee's Toys, Inc.*, 160 F.3d 489, 491 n.2 (8th Cir. 1998) ("Because the Missouri common law action utilizes the same elements as an action under the Lanham Act, we need discuss only the alleged Lanham Act violation.") (cleaned up).

Plaintiff's amended complaint (ECF 62) is 48 pages long and contains numerous specific allegations regarding defendant's alleged false advertising,

including detailed allegations that defendant originally falsely advertised Capt-all as an amalgam separator (paragraphs 23-32, 36-50, 60-68, 71-74) and then subsequently amended its advertising to falsely claim that its Capt-all device is "EPA compliant" (paragraphs 32-35, 51-59, 75, 77-151), including links to statements made by (or on behalf of) defendant online.  These allegations satisfy the "who, what, where, when, and how" requirement of Rule 9(b) to plead fraud with particularity, *see Drobnak v. Andersen Corp.*, 561 F.3d 778, 783 (8th Cir. 2009), so defendant's motion to dismiss will be denied on that basis.

With respect to the false advertising claims, defendant relies on authority from the Second Circuit, Ninth Circuit, and District of Columbia Courts of Appeal in support of its position that advertising a product as legal or compliant with regulations is inactionable opinion, rather than fact, because it "purports to interpret the meaning of a statute or regulation."  *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 731 (9th Cir. 1999); *Azurity Pharms., Inc. v. Edge Pharma, LLC*, 45 F.4th 479, 493 (1st Cir. 2022); *Dial A Car. Inc. v. Transportation, Inc.*, 82 F.3d 484, 485-86 (D.C. Cir. 1996).

In opposition to dismissal, plaintiff argues that this precedent has been effectively overruled by the United States Supreme Court's decision in *POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102 (2014).  In *POM Wonderful*, the Supreme Court rejected a defendant's contention that the Food, Drug, and

Cosmetic Act (FDCA) precluded a Lanham Act claim involving a challenge to a statement made in a label on a food item that was regulated by FDA pursuant to its authority to administer the FDCA's food labeling provisions. *Id.* at 121. The Supreme Court held that "the centralization of FDCA enforcement authority in the Federal Government does not indicate that Congress intended to foreclose private enforcement of other federal statutes." *Id.* at 117. Thus, because the plaintiff there sought to "enforce the Lanham Act, not the FDCA or its regulations," the FDA's exclusive enforcement authority did not itself warrant preclusion of the plaintiff's Lanham Act claim. *Id.*

As explained by the Second Circuit in *Azurity*, *Pom Wonderful* deals with FDCA preclusion, not whether a statement is actionable under the Lanham Act, which is the issue in the line of cases adopting *Coastal Abstract* and at bar. *See Azurity*, 45 F.4th at 490 (distinguishing this argument from FDCA preclusion as a "non-preclusion-based ground for dismissal").

In *Coastal Abstract*, the Ninth Circuit considered whether a plaintiff could state a Lanham Act claim based on a defendant's statement that the plaintiff "was not licensed in California as an escrow company," 173 F.3d at 729, and that the defendant "stated or clearly implied" that such a license was "required [by California law] . . . for [the plaintiff's] activities in connection with refinancing California property. " *Id.* at 731. The Ninth Circuit concluded that, "[a]bsent a

7

clear and unambiguous ruling from a court or agency of competent jurisdiction, statements by laypersons that purport to interpret the meaning of a statute or regulation are opinion statements, and not statements of fact," and, as such, are "not generally actionable under the Lanham Act." *Id.*  In reaching its decision, the Ninth Circuit relied on the fact that "the correct application of [the statutory licensing requirement] was not knowable to the parties at the time that [the defendant] made the licensure statement." *Id.* at 732.

Similarly, in *Dial A Car*, the D.C. Circuit rejected a claim that the defendants "violat[ed] the Lanham Act by misrepresenting to [the plaintiff]'s actual and potential . . . customers that [the defendants'] taxicabs can legally provide within [Washington, D.C.]" point-to-point transportation to corporate clients using taxicabs licensed in Virginia or Maryland, but not D.C.  82 F.3d at 486.  The plaintiff in that case argued that an order by the D.C. Taxicab Commission Office prohibited the defendants' taxicabs from providing the service in question to or from D.C. unless their passengers' origin or destination was in the county of the taxicabs' licensure.  *Id.*  The D.C. Circuit held that the defendants' representations at issue were not actionable under the Lanham Act because "there must be a clear and unambiguous statement from the Taxicab Commission regarding [the defendants'] status before a Lanham Act claim can be entertained"

based on the defendants' statements "that they lawfully may perform" a particular service and there was none in that case. *Id.* at 485, 489.

The D.C. Circuit did acknowledge that it was possible that "a regulation might conceivably be drafted that would be so clear on its face that no good faith doubt concerning its interpretation would be possible, even without an explicit statement from the [relevant regulatory entity]." *Dial A Car* 82 F.3d at 489 n.3.  In such a circumstance, the appellate court posited, the meaning of the regulation in question could be "so clear as to be a fact for Lanham Act purposes," such that a representation as to whether or not the defendant was violating a law might be actionable as a "false or misleading representation of fact." *Id.* (citing 15 U.S.C. § 1125(a)(1)).  Because the regulation at issue in that case was not of that sort, the Lanham Act claim was dismissed.  *Id.*

The Second Circuit applied these authorities in considering whether statements made by defendant concerning its compliance with various provisions of the FDCA stated a claim for false advertising under the Lanham Act, noting that the plaintiff "does not take issue with the framework for analysis that *Coastal Abstract* and *Dial a Car* set forth." *Azurity*, 45 F.4th at 479.  Using that framework, the Second Circuit concluded that most of the defendant's statements regarding compliance with the FDCA were inactionable opinion, while one statement regarding its compliance with the "bulk drug substance" provision could

be considered a statement of fact because the statutory language was so clear on its face as "to what condition it establishes for the scope of the condition to be a fact." *Id.* at 497. Accordingly, the Second Circuit reversed the district court's dismissal of plaintiff's Lanham Act false advertising claim with respect to that statement alone. *Id.*

In addition to the exception recognized by the D.C. Circuit in *Dial A Car* and applied by the Second Circuit in *Azurity*, the Ninth Circuit has also recognized an exception to the general rule it announced in *Coastal Abstract*: "There is a well-established exception that an opinion by a speaker who lacks a good faith belief in the truth of the statement is actionable.*"* *ThermoLife Intern., LLC v. Gaspari Nutrition Inc.*, 648 Fed. Appx. 609, 614–15 (9th Cir. 2016) (cleaned up).[2] "Because every opinion explicitly affirms that the speaker actually holds the stated belief, a speaker's statement about legal compliance would falsely describe her own state of mind if she thought her company was breaking the law." *Id.* (cleaned up).

The Eighth Circuit has not yet decided whether the *Coastal Abstract*, *Azurity*, and *Dial a Car* line of authority applies in this circuit. Plaintiff suggests –

---

[2]This decision was issued two years after *Pom Wonderful*. Like the Second Circuit in *Azurity*, the Ninth Circuit applies *Pom Wonderful* with respect to the issue of preclusion, but then goes on to apply *Coastal Abstract* to decide whether the plaintiff stated triable Lanham Act claims. *ThermoLife*, 648 Fed. Appx. at 612-13 and 615.

without citation to any authority – that the Second Circuit in *Azurity* is "plainly wrong" in its application of *Coastal Abstract* following *Pom Wonderful*. ECF 73 at 7 n.1. Given that both the Second and Ninth Circuits thoroughly considered and applied *Pom Wonderful* in both *Azurity* and *Thermolife*, I find it unlikely that I will conclude that they are "plainly wrong" in their determination that the *Coastal Abstract* line of authority continues to apply after *Pom Wonderful*, particularly when no other court has reached the conclusion urged by plaintiff. However, I need not – and therefore do not – decide this issue at this time, for plaintiff has stated a Lanham Act claim even under these cases and defendant's motion must therefore be denied.

Plaintiff alleges that defendant made, and caused others to make, false statements that the Capt-all was tested and found to be an amalgam separator when defendant knew that Capt-all did not meet the regulatory definition of an amalgam separator.[3] Defendant concedes that the Capt-all is not an amalgam separator but is instead an amalgam removal device "other than an amalgam separator." (ECF 70

---

[3] Paragraph 41 of the amended complaint alleges that defendant claimed that the Capt-all "exceeds the ISO requirements of 95% removal of all amalgam, meeting the specification of ISO 11143:2008 . . ." (ECF 62 at 8) and that this was confirmed through two studies which it had published (ECF 62 at 8-10) knowing this was false. Plaintiff had the studies independently evaluated, and plaintiff's study concluded that defendant's study made false claims regarding the testing organization's credentials and compliance with the cited regulations. Defendant subsequently amended its website to acknowledge that Capt-all is not an amalgam separator: "No, Capt-all is not ISO 11143 compliant, only amalgam separators covered under (a)(1) of 441.30 of the final ruling are required to be ISO 11143 compliant." (ECF 62 at 12).

at 8).   Plaintiff also alleges that defendant made, and caused others to make, false statements regarding Capt-all's compliance with EPA regulations as an amalgam removal device other than a separator when defendant knew that the representations were false.[4]   Given that plaintiff has alleged that these statements were made by defendant knowing they were false, under the exception announced in *Thermolife* plaintiff has stated a claim for false advertising under the Lanham Act.

This is true even if some statements about Capt-all being "compliant" with EPA regulations may not be actionable under the *Coastal Abstract* line of authority.  I need not – and therefore, do not – decide at this stage in the proceedings whether the regulation at issue is of the type of clarity as "to what condition it establishes for the scope of the condition to be a fact."  I only note that plaintiff cites no authority so finding.  Moreover, given that the regulation permits a dentist to comply with the EPA's standards by installing "one **or more** amalgam removal device(s) other than an amalgam separator," the Court certainly cannot find at this stage of the proceedings that the regulation clearly requires the Capt-all device to remove at least 95 percent amalgam from all wastewater to be "EPA

---

[4] Plaintiff alleges defendant has falsely claimed that Capt-all "meets EPA 441.30(a)(2)" (ECF 62 at 10-11), "Capt-all is compliant under 441.30(a)(2) of the EPA final ruling" (ECF 62 at 23), Capt-all requires "[n]o installation . . . to be instantly compliant" (ECF 62 at 23), and that "Capt-all is classified as an EPA Equivalent Device meeting all best management practices under the final ruling, 441.30(a)(2)(i-iii)" (ECF 62 at 25).

compliant." However, whether plaintiff is ultimately entitled to relief on its Lanham Act claim is not currently before me, and I am not deciding at this time whether *Coastal Abstract* precludes some aspects of plaintiff's Lanham Act claim. I only find that plaintiff has stated a Lanham Act claim and is entitled to discovery on Count I of its amended complaint. The motion to dismiss Count I will be denied. Because the same standards apply to plaintiff's Missouri law claim for unfair competition, the motion to dismiss Count III is also denied for the same reasons.

As for plaintiff's contributory false advertising claim asserted in Count II of the amended complaint, the Supreme Court has recognized in the trademark infringement arena that liability under the Lanham Act "can extend beyond those who actually mislabel goods." *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 853 (1982). The Eleventh Circuit Court of Appeals, after considering *Inwood Labs.* and *Pom Wonderful*, held that the Lanham Act also permits a plaintiff to bring a claim for contributory false advertising under § 43(a) of the Lanham Act. *Duty Free Americas. Inc. v. Estee Lauder Companies, Inc.*, 797 F.3d 1248, 1277 (11th Cir. 2015). The Supreme Court has not specifically approved of, or rejected, such a claim, and no other Circuit Court of Appeal, including the Eighth Circuit, has, either. Given the dearth of authority on this issue, I will deny the motion to dismiss at this time and permit plaintiff to conduct discovery on its claim.

However, whether plaintiff will ultimately be permitted to maintain or succeed on such a claim as a matter of law is not before me at this stage of the proceedings. The motion to dismiss Count II is denied.

As plaintiff concedes that its request for injunctive relief is not properly pleaded as a standalone claim, ECF 73 at 19, and given that plaintiff's prayer for relief already includes a request for injunctive relief, Count IV of the amended complaint will be dismissed.

Finally, I urge the parties to use their best efforts to settle this case during the upcoming mediation, as continued, protracted litigation will likely lead to increased costs without a desirable outcome for either party.

Accordingly,

**IT IS HEREBY ORDERED** that the motion to dismiss [69] is granted as to Count IV of the amended complaint and denied in all other respects.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 2nd day of October, 2023.